UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN PIERRE CORTEZ ROJAS,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, Warden, Northwest ICE Processing Center, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03683-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART |

## 1. INTRODUCTION

Petitioner Brian Pierre Cortez Rojas is an asylum applicant from Peru whom immigration officials released from custody on May 6, 2024. Dkt. No. 7-2 at 2. For over two years, he built a life in America where he lived and worked. On September 11, 2026, Cortez Rojas was detained without notice or an opportunity to be heard at a routine immigration appointment and then transferred to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). For the reasons below, the habeas petition is GRANTED IN PART.

## 2. BACKGROUND

Cortez Rojas is a former member of Peru's National Police who fled Peru to escape the revenge and violence carried out against police members by narco-terrorist groups. Dkt. No. 1 at 40–50. On April 22, 2024, he entered the United States near Eagle Pass, Texas, without inspection, admission, or parole. Dkt. No. 7-3 at 3–4. Border Patrol apprehended him and processed him for expedited removal. Dkt. No. 6 ¶ 5. On April 27, 2024, an asylum officer with United States Citizenship and Immigration Services (USCIS) found that Cortez Rojas had a credible fear of returning to Peru. Dkt. No. 7-3 at 3. On May 2, 2024, USCIS vacated the expedited removal order and issued him a Notice to Appear ("NTA"). *Id.*

On May 6, 2024, Immigration and Customs Enforcement (ICE) released Cortez Rojas on an Order of Release on Recognizance ("OREC"). Dkt. No. 7-2 at 2. The OREC established "scheduled reporting" requirements for Cortez Rojas. Dkt. No. 7-3 at 3.

On September 11, 2026, Cortez Rojas was detained when he reported to ICE's Seattle Field Office as required under his OREC. *Id.* Immigration officers allege that he didn't comply with all of his reporting requirements. *Id.* Cortez Rojas says that he did comply, but he acknowledges three reported alerts for missed remote check-ins and that some of his submissions were received late. Dkt. Nos. 8 at 3; 9 at 2. Cortez Rojas was then transferred to the NWIPC, where he remains. Dkt. No. 7-3 at 3.

Cortez Rojas filed his habeas petition on September 28, 2026, challenging his mandatory detention status under 8 U.S.C. § 1225 and his re-detention under due

process. Dkt. No. 1 at 4. Respondents contend that Cortez Rojas is subject to mandatory detention under 8 U.S.C. § 1225 and that his re-detention does not violate due process. Dkt. No. 5 at 2–7. Cortez Rojas filed a traverse on October 19, 2026. Dkt. No. 8.

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## 4. DISCUSSION

### 4.1 Cortez Rojas is not subject to mandatory detention under 8 U.S.C. § 1225(b).

Respondents argue relief should be denied because Cortez Rojas is mandatorily detained under 8 U.S.C. § 1225. Dkt. No. 5 at 2. But as Respondents acknowledge, a person detained under § 1225(b) may be released only under the

agency's parole authority, 8 U.S.C. § 1182(d)(5)(A). *Id.* at 3. Cortez Rojas was released on an OREC. Dkt. No. 7-2 at 2. Release on an OREC is conditional parole under § 1226(a)(2)(B); *see also Ortega Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under § 1226). That Cortez Rojas was detained and released under § 1226 is confirmed by ICE's own paperwork—his OREC, his 2026 arrest warrant, and his 2026 Notice of Custody Determination all invoke section 236, which is codified at Section 1226. Dkt. No. 7-2 at 2; Dkt. No. 7-4 at 2; Dkt. No. 7-5 at 2.

The Court finds that Cortez Rojas is not subject to mandatory detention under Section 1225(b) and is instead detained under Section 1226(a). Respondents acknowledge "that courts in this District, including this Court, have found that noncitizens re-detained after release on OREC are detained pursuant to 8 U.S.C. § 1226(a) and not Section 1225(b)." Dkt. No. 5 at 5. And even if § 1225(b) applied, the due process requirements below would still govern Cortez Rojas's re-detention. *See Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *2 (W.D. Wash. Jan. 29, 2026); *Mendez Rodriguez v. Hernandez*, No. 2:26-cv-02620-GJL, 2026 WL 2546112, at *2 (W.D. Wash. Aug. 28, 2026).

### 4.2 Cortez Rojas's re-detention without notice and a pre-deprivation hearing violates procedural due process.

To determine what process Respondents must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest

at stake, the risk of erroneous deprivation through existing procedures, and Respondents' interest. *Id.* This Court has applied that test in materially similar circumstances and found that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's release order and re-detaining them. *See Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025). The weight of persuasive authority is in accord.[1]

The Court finds no reason to distinguish Cortez Rojas's case from similar cases in which ICE revoked ORECs without providing pre-deprivation notice or an opportunity to be heard. Considering the first *Mathews* factor, Cortez Rojas has a strong liberty interest in not being detained. Indeed, "Petitioner's interest in not being detained is 'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). That liberty interest exists even when release is conditional and must be

---

[1] *See, e.g.*, *Aslan*, 2026 WL 238675, at *3 (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (applying *Mathews*, 424 U.S. at 332)); *Tessema v. Bondi*, No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9.

afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

Second, without notice and a pre-deprivation hearing, the risk of erroneous deprivation is high. Respondents offer no specific arguments or reasons why the risk of erroneous deprivation to Cortez Rojas would be minimal in this case and acknowledge that "[t]he facts in this case are similar to prior cases where courts have found that ICE violated due process when re-detaining a noncitizen for violations of an OREC without a pre-deprivation hearing." Dkt. No. 5 at 5–6.

The risk of erroneous deprivation is further highlighted here, where Respondents provide no documentation identifying the violations that prompted the revocation. Respondents submit a Form I-213, an arrest warrant, a Notice of Custody Determination, and a cancellation memorandum, all dated the day of Cortez Rojas's arrest. Dkt. Nos. 7-3 at 2–4; 7-4 at 2; 7-5 at 2; 7-6 at 2. The Form I-213 notes that he had "multiple violations" of his ATD conditions. Dkt. No. 7-3 at 3. But Respondents fail to articulate what those violations were, much less substantiate them. The Court notes that Deportation Officer Ouk's declaration is based on his review of "various records and systems maintained by ICE in the regular course of business," rather than personal knowledge of Cortez Rojas's specific circumstances, and it does not describe the alleged violations. Dkt. No. 6 at 1–4. Even assuming the declaration is admissible, its conclusory assertions underscore the risk of erroneous deprivation when no hearing is held.

Third, Respondents' interest in re-detaining previously released noncitizens without a hearing is low. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324

(W.D. Wash. 2025). Nothing required ICE to act before holding a hearing. Respondents offer no arguments specific to Cortez Rojas and no reason why this interest cannot be furthered while also providing individuals on conditional release with notice and an opportunity to be heard before their release is terminated. Respondents do note that the regulations permit ICE to revoke release "at any time," Dkt. No. 5 at 5 (citing 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9)), but authority to revoke does not answer what process the Constitution requires first. In sum, due process requires notice and a pre-detention hearing here, as it does in similar cases.

All *Mathews* factors favor Cortez Rojas and support finding that his detention violates procedural due process. *Aslan*, 2026 WL 238675, at *3 (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Cortez Rojas did not receive a hearing before his re-detention. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, his detention violates procedural due process, and he must be released.

Because the Court orders Cortez Rojas's release, his requests for a bond hearing with specified procedures and for an order barring his transfer are moot. Dkt. No. 1 at 5. The Court also declines to order Respondents to preserve his detainee messaging records, since it resolves the petition without them. *Id.* This ruling does not relieve Respondents of any independent duty to otherwise preserve and retain those records.

## 5. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 1.
2. Respondents must RELEASE Cortez Rojas within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.
3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Cortez Rojas has been released from custody and informing the Court of the date and time of his release.
4. Respondents may not re-detain Cortez Rojas during the pendency of his removal proceedings without first giving him written notice of the basis for the proposed re-detention and a hearing on that notice before an immigration judge, held before re-detention, at which the Respondents bear the burden of justifying it.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).
6. All other requested relief is DENIED WITHOUT PREJUDICE as stated in this order.

Dated this 13th day of November, 2026.

Jamal N. Whitehead
United States District Judge